CITY OF NEW YORK v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Term.   April 8, 1910.)

STREET RAILROADS (§ 24*)—LICENSE FEES—FRANCHISE AND ORDINANCES.

Laws 1860, c. 511, having granted a street railway company a franchise to construct and operate a railroad on certain streets in the city of New York, subject to such reasonable rules and regulations as the common council may from time to time prescribe, with a provision as to payment to the city of an annual license fee, on which the parties put the practical construction of meaning a fee of $50 per car, based on the greatest number of cars in daily use at the busiest season of the year, and not on every car used during the year, and with a provision authorizing and requiring the city council to grant the company permission to construct and operate the road, and there having been in force at the time Laws 1860, c. 10, declaring it to be unlawful to construct and operate a railroad on a street of such city, except under the authority and subject to the regulations and restrictions which the Legislature may grant and provide, so that the Legislature, as the sole source of the rights of franchise for such a construction and operation, could alone prescribe the regulations and restrictions therefor, the city had no right to collect, or to impose a penalty for failure to pay, a greater license fee, because of the permission of the common council to lay the tracks providing that the company should be subject to certain ordinances, providing that every passenger car running in the city should annually pay it $50 for a license, and declaring a penalty for failure to exhibit in the car the certificate of payment.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 43, 69; Dec. Dig. § 24.*]

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by the City of New York against the New York City Railway Company.   From a judgment for defendant, plaintiff appeals. Affirmed.

The following is the opinion of Spiegelberg, J., in the court below:

The assignors and incorporators of the Central Park, North & East River Railroad Company were authorized by legislative enactment to construct and operate a street railroad in certain streets in the city of New York.   The grant is contained in chapter 511, Laws 1860, and the second section thereof reads as follows:

"Said railroad shall be constructed upon the most approved plan for the construction of city railroads, and the cars on same shall run as often as the convenience of the public shall require, and shall be subject to such reasonable rules and regulations in respect thereto, in the transportation of passengers and freight in suitable cars, as the common council of the city of New York, may, from time to time, by ordinance prescribe, and to the payment to the city of the same license fee annually for each passenger car run thereon, as is now paid by other city railroads in said city; and no higher rate of fare shall be charged for the conveyance of passengers thereon than is now charged by the city railroads in said city now chartered and constructed; and the said common council are hereby authorized and required to grant permission to the persons herein named, or their assigns to construct, maintain, operate and use said railroads in, upon, and along the several streets and avenues herein mentioned."

The Central Park, North & East River Railway Company obtained from the common council permission to lay its tracks in the streets specified in the act of the Legislature.   The permission of the common council was embodied in a lengthy resolution approved by the mayor on December 31, 1861,

and one sentence thereof provides that the railroad "shall be subject to all the provisions of chapter 41 of the Corporation Revised Ordinances, approved June 20th, 1859." Chapter 41 of said Revised Ordinances provides as follows:

"Section 1. Each and every passenger railroad car running in the city of New York below 125th street shall pay into the city treasury the sum of fifty dollars annually for a license, a certificate of such payment to be procured from the mayor, except the small one horse passenger cars, which shall each pay the sum of $25 annually for said license as aforesaid.

"Sec. 2. Each certificate of payment of license shall be affixed to some conspicuous place in the car that it may be inspected by the proper officers.

"Sec. 3. For every passenger car run upon any of the city railroads below 125th street without the proper certificate of license, the proprietor or proprietors thereof shall be subject to a penalty of $50 to be recovered by the corporation attorney as in the case of other penalties and for the benefit of the city treasury."

It is admitted that the defendant in this case is the lessee by various mesne conveyances of the Central Park, North & East River Railroad Company, and that in the year 1860, the year of the grant of the franchise, the only street railroads in the city of New York which paid license fees for the cars operated by them paid such fees on the basis of the greatest number of cars in daily use at the busiest season of the year, and did not pay license fees for each and every car operated by them during the year, and that the defendant and its assignors have made payments for car license fees computed on the basis of the greatest number of cars in daily use during such season. The substance of chapter 41 of the ordinance of June 20, 1859, was in full force and effect on May 21, 1907. On that date the defendant operated five cars over the line of the Central Park, North & East River Railroad below 125th street in the borough of Manhattan, in which no certificate of the payment of license fees was posted and for which no certificate of license had been procured. This action is brought to recover a penalty of $50 for each of the cars so operated.

This is the second trial of this case, a judgment obtained in favor of the plaintiff on the first trial having been reversed. The Appellate Term (opinion reported in 117 N. Y. Supp. 921) held that the provision of the franchise of the Central Park, North & East River Railroad Company to pay "such license fee annually for each car run thereon as is now paid by other street railroads in said city" had been interpreted by the Court of Appeals in the case of the City of New York v. New York City Railway Company, 193 N. Y. 543, 86 N. E. 565, to mean that the basis of the tax was the greatest number of cars in daily use at the busiest season of the year. Since the reversal of the first judgment by the Appellate Term the plaintiff has amended its complaint by alleging an agreement by defendant's lessor to be bound by chapter 41 of the Revised Ordinances above quoted. The learned counsel for the plaintiff contends that the resolution of the common council of December 31, 1861, which subjected defendant's lessor to the provisions of the ordinance of June 20, 1859, was a part of the franchise of the Central Park, North & East River Railroad Company, and when accepted became a contract between it and the city, and that by such acceptance the decision of the Court of Appeals in 193 N. Y. 543, 86 N. E. 565, has no application to the present case. I cannot agree with that proposition. The Court of Appeals has given an authoritative interpretation of the obligation of the railway company in regard to the car license fees. The provision of the statute in the case before the court reads exactly the same as the one now under consideration, to wit: "Said railroad * * * shall be subject * * * to the payment to the city of the same license fee annually for each passenger car run thereon as is now paid by other city railroads in said city," and the court said, at page 549 of 193 N. Y., at page 567 of 86 N. E.: "As the statute and the ordinance are not clear as to the method of computing the license fees, we give effect to the practical construction of the parties continued for so long a period and hold that the basis of the greatest number of cars in daily use at the busiest season of the year is the method that is now binding upon both parties."

In that case the city likewise placed its main reliance upon an ordinance requiring the payment of $50 annually for each car, but notwithstanding the court adopted the practical construction of the parties. The fact that in this case defendant's lessor received permission from the common council to lay its tracks upon the condition, among others, to comply with the ordinance of 1859, does not in my opinion alter the situation of the parties. If counsel for the plaintiff is correct then we must look for the obligation in regard to the car licenses, not to the law of 1860, but to the resolution of 1861. At the time when the franchise was granted by the Legislature to defendant's lessor, chapter 10, Laws 1860, was in full force and effect. It reads: "It shall not be lawful hereafter to lay, construct, or operate any railroad in, upon, or along any or either of the streets or avenues of the city of New York, wherever such railroad may commence or end, except under the authority and subject to the regulations and restrictions which the Legislature may hereafter grant and provide."

The Legislature, therefore, was the sole source of the rights of franchise for constructing or operating any railroad in the city of New York. In pursuance thereof the Legislature, and only the Legislature, could make such regulations and restrictions as it deemed proper. An analysis of section 2, c. 511, Laws 1860, shows that the common council was not merely authorized, but required to grant permission for the construction of the railroad. The only matter that was left to the common council as it may from time to time by ordinance prescribe was that the railroad shall be subject to reasonable rules and regulations in respect to the number of the cars and the transportation of freight and passengers in suitable cars. It is significant that the provision relating to the car license fee immediately follows, but the language thereof clearly shows. that that matter was not left to the common council, but was dealt with directly by the Legislature. The right to prescribe the car license obligation not having been delegated to the common council I fail to see how any interpretation can be put upon the statutory provision in this case other than the one laid down by the Court of Appeals. The court held in the case above cited, at page 548 of 193 N. Y., at page 567 of 86 N. E.: "The Legislature by the act of 1860 did not directly fix the fees, either as to amount or the method of computation, but referred to an existing fact, and made that the basis of both. That fact was the amount paid for each car by other city railroads. Some of those roads paid no license fees, and others paid at the rate of $50 per car for the greatest number in daily use during the busiest season. That was the rate actually paid, as contrasted with the theoretical rate of $50 for 'each and every passenger railroad car running in the city of New York,' which the plaintiff now claims should have been paid by those other roads according to the ordinance. Under these circumstances the practical construction of the parties by a uniform course of conduct under all administrations of the city government for more than forty years is of controlling importance."

The same situation still prevails in this case notwithstanding the amendment of the complaint herein. If I am correct in the view that the sole controlling authority to impose a license fee rested with the Legislature it necessarily follows that the provisions of the ordinance of June 20, 1859, are not binding upon the defendant herein. The common council was required to grant permission for the construction of the railroad in question, and nothing was left to its discretion except to pass reasonable rules and regulations in respect to the matters stated in the act of 1860, and the reading of the statute precludes any thought that the common council had any power to prescribe the rate or manner of imposing license fees. It is well settled that a municipal corporation is purely a creation and agent of the state, possessing only such powers as the Legislature confers upon it. 28 Cyc. 258. It would serve no useful purpose to multiply authorities in support of that proposition. I shall therefore content myself with quoting from the opinion of O'Brien, J., in Beekman v. Third Avenue R. R. Co., 153 N. Y. 144, 47 N. E. 277: "The authority to make use of the public streets of a city for railroad purposes primarily resides in the state, and is a part of the sovereign power, and the right or privilege of constructing and operating railroads in the streets, which for convenience is called a franchise, must always proceed from that source,

whatever may be the agencies through which it is conferred. The use or occupation of the streets for such purposes, without the grant or permission of the state, through the Legislature, constitutes a nuisance, which may be restrained by individuals injuriously affected thereby. Fanning v. Osborne, 102 N. Y. 441 [7 N. E. 307]. The city authorities have no power to grant the right except in so far as they may be authorized by the Legislature, and then only in the manner and upon the conditions prescribed by the statute. Davis v. Mayor, etc., 14 N. Y. 506 [67 Am. Dec. 186]; Milhau v. Sharp, 27 N. Y. 611 [84 Am. Dec. 314]; People v. Kerr, Id. 188."

Being of the opinion that both by the law of 1860, c. 10, and by the legislative grant of 1860, c. 511, the common council was limited to such rules and regulations concerning the defendant's lessor as were specially delegated to it by the Legislature, and that among such was not the right to impose any car license fee, I must direct judgment for the defendant.

Argued before SEABURY, P. J., and LEHMAN and GAVEGAN, JJ.

Archibald R. Watson, Corp. Counsel, and Theodore Connoly, Asst. Corp. Counsel (Terence Farley, of counsel), for appellant.

James L. Quackenbush (Joseph P. Cotton and Robert H. Neilson, of counsel), for respondent.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Mr. Justice Spiegelberg, with leave to the appellant to appeal to the Appellate Division.

---

STONE v. TEXTILE EXAMINERS & SHRINKERS EMPLOYERS' ASS'N.

(Supreme Court, Appellate Division, First Department. April 8, 1910.)

1. LIBEL AND SLANDER (§ 73*)—ACTION BY UNINCORPORATED ASSOCIATION—INJURY TO BUSINESS OR CREDIT—PLEADING AND PROOF.

Conceding the analogy between the rights of an unincorporated association suing for libel and those of a firm or partnership, partners cannot sue jointly for libel or slander unless it is alleged and proved that it tends to injure the firm's business or credit.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 174; Dec. Dig. § 73.*]

2. LIBEL AND SLANDER (§ 81*)—ACTION FOR LIBEL—PLEADING—COMPLAINT—SUFFICIENCY.

A complaint for libel by a labor union, stating as to its business that it is a labor organization transacting business in the city of New York, is insufficient to show the business in which it is engaged as a basis for recovery for alleged injury to its reputation.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 195, 209, 210; Dec. Dig. § 81.*]

3. TRADE UNIONS (§ 1*)—DEFINITION OF "TRADE UNION" OR "LABOR ORGANIZATION."

A "trade union" or "labor organization" is a combination of workmen usually, but not necessarily, of the same trade or allied trades, for the purpose of securing by united action, the most favorable conditions as regards wages, hours of labor, etc., for its members.

[Ed. Note.—For other cases, see Trade Unions, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 5, p. 4663; vol. 2, p. 1459.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.